**SOLINSKY et al. v. McPHERSON et al.**

No. 6113.

Circuit Court of Appeals, Ninth Circuit.

Dec. 9, 1930.

Rehearing Denied Jan. 12, 1931.

James F. Peck and Edw. R. Solinsky, both of San Francisco, Cal., and Nutter, Hancock & Rutherford and A. P. Hayne, all of Stockton, Cal., for appellants.

Clyde H. Brand, Harry B. Seymour, and Downey, Brand & Seymour, all of Sacramento, Cal., for appellees McPherson and others.

Chickering & Gregory and Blair S. Shuman, all of San Francisco, Cal., for appellees Michigan Trust Co., Security Trust Co., and G. C. Thomson.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge.

February 20, 1913, Charles F. Ruggles of Manistee, Mich., entered into an agreement with Frank J. Solinsky and Frank J. Solinsky, Jr., of Berkeley, Cal., reciting that, Ruggles had invested in timber and timber lands in Calaveras county, Cal., approximately $1,000,000 belonging to himself and others associated with him; that he contemplated enlarging the investment by acquiring additional lands in the same vicinity; and that the Solinskys had performed services in the acquisition of the lands, and would continue so to do in consideration of a share of the profits of the investment. It was then agreed that Ruggles would have the sole and exclusive right to invest the assets of the enterprise, to purchase, acquire, manage, rent, market, sell, or otherwise dispose of the prop-

erty acquired, and pay all expenses connected therewith, to loan money for the production, sale, or other disposition of the timber and timber products, and make all such investments and expenditures as he might deem expedient to a profitable handling of the enterprise; and the Solinskys agreed to perform all such services reasonably connected with the enterprise as Ruggles might suggest. It was then agreed that all the profits derived from the sale or use of the property would be retained by Ruggles until he received the full amount invested by him and his associates, together with taxes and interest, after which one-eighteenth of the net profits of the investment would be paid to the Solinskys. It was further specifically agreed that the right or claim of the Solinskys under the agreement should be a personal claim against Ruggles, or his representatives; that under no circumstances should the Solinskys be deemed to have any right, title, interest, lien claim or demand, legal or equitable, of any kind or nature whatsoever, in, to, upon, or against the lands or timber, and that the agreement should not be construed to constitute a partnership between the parties, or give the Solinskys any interest in or control over the lands or timber, or any part thereof, but should be construed as a contract whereby each of the parties bound himself to perform the services, and for the compensation therein provided. Pursuant to the contract, a large acreage of timber land was conveyed to Ruggles prior to June 11, 1927, and on May 26, 1927, Ruggles caused to be organized, under the laws of the state of Michigan, the Calaveras Timber Company, a corporation, for the purpose of transferring to it title to the timber lands acquired by him under the terms of the contract, and the same was so transferred. Later, the Calaveras Timber Company conveyed the property to the Michigan Trust Company, the Detroit Trust Company, and one Thomson, as trustees, in trust and by way of mortgage to secure a bonded indebtedness of $2,660,000.

While perhaps not material to our present inquiry, it may be stated that on May 19, 1924, the Solinskys granted and assigned to Ruggles an undivided one-half interest in and to the foregoing contract and all rights arising thereunder or created thereby.

The present suit was instituted by the Solinskys against Ruggles, the Calaveras Timber Company and its directors, and the trustees, named in the trust deed, or deeds, executed by the timber company. The prayer was for a decree setting aside and annulling the conveyance from Ruggles to the timber company and the trust deeds executed by the timber company to secure the bonded indebtedness, and for general relief. A motion to dismiss was granted by the court below, followed by a decree dismissing the complaint as to all the defendants except Ruggles and transferring the case to the law side of the court as to him. Pending the appeal, Ruggles died, and the special administrators of his estate have been substituted in his place and stead.

The particular theory upon which the appellants base their claim for relief, or the particular relief claimed, is not very clearly expressed or defined. The contract upon which they base their claim explicitly provided that their claim against Ruggles, or his personal representatives, should be a personal one; that under no circumstances should the appellants be deemed to have any right, title, interest, lien claim or demand, legal or equitable, of any kind or nature whatsoever, in, to, upon, or against the lands or timber, and that the agreement should not be construed to constitute a partnership between the parties, or give the appellants any interest in or control over the lands or timber, or any part thereof. Inasmuch as the agreement fixed no time for liquidation or performance, common prudence would seem to dictate some such provision as the foregoing, otherwise the vast holdings contemplated by the agreement might be subject to a trust, or equitable lien of some kind, for a generation or more to secure the payment of a relatively small contingent claim that might never materialize. In any event, for good and sufficient reasons, the parties have stipulated that the claim of the appellants is a personal one only, and their right to so stipulate is not called in question. This provision of the contract takes the case out of the rule announced by the Supreme Court in Seymour v. Freer, 8 Wall. (75 U. S.) 202, 19 L. Ed. 306, and was doubtless inserted for that very purpose. Treating the claim of the appellants as a personal, contingent one which has not yet matured, as we must, they have no standing in a court of equity in a suit to set aside a transfer of the property by their debtor. 27 C. J. 476, 723.

A considerable part of the argument before this court was addressed to the question of specific performance. There is nothing in the complaint to indicate that the suit was brought with any such object in view, and the opinion of the court below would seem to indi-

cate, by its silence, that no such question was presented there. But, in any event, we see no merit in the claim. The consideration for the agreement on the part of the appellants was the performance of personal services which they obligated themselves to perform until final liquidation, and in such cases a suit for specific performance will not lie.

"Especially where, by the partnership agreement, as in the case at bar, the defendant is to supply all or most of the capital, and the plaintiff is to furnish his personal services, the agreement cannot be specifically enforced against the plaintiff, and will not be enforced against the defendant. * * *

"In the somewhat analogous case of a contract of hiring and service, it is well settled that a court of equity cannot compel the performance of the service, although it may in some cases enforce a negative stipulation not to serve any third person within the time agreed." Karrick v. Hannaman, 168 U. S. 328, 336, 18 S. Ct. 135, 138, 42 L. Ed. 484.

To get away from this well-established rule, the appellants fall back on the allegation in the complaint that they have duly performed all the conditions of the contract on their part. But this allegation means nothing more than due performance up to the time of filing the complaint, whereas the contract itself required continued performance up to the time of final liquidation. For these reasons, the appellants have failed to make out a case entitling them to equitable relief; and the question whether the contract has been breached by the transfer to the timber company, and the subsequent trust deeds, is not before us.

The decree of the court below is affirmed.